1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TERRENCE O'SULLIVAN,

11              Petitioner,                    No. 2:08-cv-1469 MCE JFM P

12        vs.

13   STEVE MOORE,

14              Respondent.                    FINDINGS & RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner, proceeding through counsel, with an application for

17   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On January 31, 1992, petitioner pled guilty

18   to second degree murder (Cal. Penal Code § 187) in Alameda County Superior Court and was

19   sentenced to 15 years to life in state prison.  (Pet. at 2.)  In the petition now pending before this

20   court, petitioner challenges the November 15, 2006 decision of the California Board of Prison

21   Terms (hereinafter, the "Board")[1] that he is unsuitable for parole.  (P. & A. in Supp. of Pet.,

22   hereinafter "P&A," at 5.)  Upon consideration of the record and the applicable law, the

23   undersigned recommends that petitioner's application for habeas corpus relief be denied.

24   /////

25   _____

26      [1]  California has since replaced the Board of Prison Terms with the Board of Parole
     Hearings.  See Cal. Penal Code § 5075(a).

PROCEDURAL BACKGROUND

On November 15, 2006, petitioner appeared before the Board for his fifth subsequent parole consideration hearing and was found unsuitable for parole.  (P. & A. at 5.)

On May 18, 2007, petitioner challenged the Board's 2006 decision through a habeas petition filed in Alameda County Superior Court.  (Pet., Ex. at 199.)[2]  The Superior Court issued a reasoned opinion affirming the Board's decision and denying the petition on September 17, 2007.  (Id., at 255.)

Petitioner filed an application for writ of habeas corpus to the California Court of Appeal for the First Appellate District which was summarily denied on October 25, 2007.  (Id., at 263.)

Petitioner filed an application for writ of habeas corpus to the California Supreme Court, which was summarily denied on April 30, 2008.  (Id., at 265.)

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

---

[2]  All references to petitioner's attachment will utilize the court's docketing page numbers.

2

1   indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

2   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

3   (2000)).

4           Under the  "unreasonable application" clause of section 2254(d)(1), a federal

5   habeas court may grant the writ if the state court identifies the correct governing legal principle

6   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

7   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

8   simply because that court concludes in its independent judgment that the relevant state-court

9   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

10  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63,

11  123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent

12  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

13  The court looks to the last reasoned state court decision as the basis for the state court judgment.

14  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

15  II.  Petitioner's Claims

16          Petitioner alleges that the Board's November 15, 2006 denial of parole violated

17  his right to due process under the United States Constitution.  (P. & A. at 10-28.)  Additionally,

18  petitioner alleges that "objections to parole from the prosecutor amount to a breach of

19  petitioner's plea agreement."  (Id. at 29-31.)

20      A.  Parole & Due Process

21              1.  Due Process in the California Parole Context

22          The Due Process Clause of the Fourteenth Amendment prohibits state action that

23  deprives a person of life, liberty, or property without due process of law.  One alleging a due

24  process violation must first demonstrate that he was deprived of a liberty or property interest

25  protected by the Due Process Clause and then show that the procedures attendant upon the

26  /////

3

1   deprivation were not constitutionally sufficient. <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454,

2   459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).

3       A protected liberty interest may arise from either the Due Process Clause of the

4   United States Constitution or state laws. <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The

5   United States Constitution does not, of its own force, create a protected liberty interest in a parole

6   date, even one that has been set. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981). However, "a

7   state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release

8   will be granted' when or unless certain designated findings are made, and thereby gives rise to a

9   constitutional liberty interest." <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz v. Inmates of</u>

10  <u>Neb. Penal</u>, 442 U.S. 1, 12 (1979)).

11      California's parole scheme gives rise to a cognizable liberty interest in release on

12  parole, even for prisoners who have not already been granted a parole date. <u>Sass v. Cal. Bd. of</u>

13  <u>Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th

14  Cir. 2003); <u>McQuillion</u>, 306 F.3d at 903; <u>see also</u> <u>In re Lawrence</u>, 44 Cal. 4th 1181, 1204, 1210,

15  1221 (2008). Accordingly, this court must examine whether California provided the

16  constitutionally-required procedural safeguards when depriving petitioner of a protected liberty

17  interest and, if not, whether the Alameda County Superior Court's conclusion that it did was

18  contrary to or an unreasonable application of clearly established federal law as determined by the

19  Supreme Court.

20      It is clearly established federal law that a parole board's decision deprives a

21  prisoner of due process with respect to his constitutionally protected liberty interest in a parole

22  release date if the Board's decision is not supported by "some evidence in the record."

23  <u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985); <u>Irons v. Carey</u>, 505 F.3d 846, 851 (9th Cir.

24  2007); <u>Sass</u>, 461 F.3d at 1128; <u>Biggs</u>, 334 F.3d at 915. "The 'some evidence' standard is

25  minimally stringent," and a decision will be upheld if there is any evidence in the record that

26  could support the conclusion reached by the factfinder. <u>Powell v. Gomez</u>, 33 F.3d 39, 40 (9th

4

Cir. 1994) (citing <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987)).  <u>See also</u> <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision must have some indicia of reliability." <u>Jancsek v. Or. Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987).  <u>See also</u> <u>Perveler v. Estelle</u>, 974 F.2d 1132, 1134 (9th Cir. 1992). Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  <u>Toussaint</u>, 801 F.2d at 1105.  The question is whether there is any reliable evidence in the record that could support the conclusion reached.  <u>Id</u>.

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." <u>Irons</u>, 505 F.3d at 851.  Therefore, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in <u>Hill</u>.

<u>Id</u>.

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1078 (2005).  The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." <u>In re Lawrence</u>, 44 Cal. 4th at 1202 (citing Cal. Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more

5

1  lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal.

2  Penal Code § 3041(b).

3          In order to carry out the mandate of section 3041, the Board must determine

4  "whether the inmate poses 'an unreasonable risk of danger to society if released from prison,'

5  and thus whether he or she is suitable for parole."  In re Lawrence, 44 Cal. 4th at 1202 (citing

6  Cal. Code Regs., tit. 15, § 2281(a)).  In doing so, the Board must consider all relevant, reliable

7  information available regarding

8          the circumstances of the prisoner's social history; past and present
           mental state; past criminal history, including involvement in other
9          criminal misconduct which is reliably documented; the base and
           other commitment offenses, including behavior before, during and
10         after the crime; past and present attitude toward the crime; any
           conditions of treatment or control, including the use of special
11         conditions under which the prisoner may safely be released to the
           community; and any other information which bears on the
12         prisoner's suitability for release.

13  Cal. Code Regs., tit. 15, § 2281(b).

14         The regulation identifies circumstances that tend to show suitability or

15  unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances

16  tend to show that a prisoner is suitable for release: (1) the prisoner has no juvenile record of

17  assaulting others or committing crimes with a potential of personal harm to victims; (2) the

18  prisoner has experienced reasonably stable relationships with others; (3) the prisoner has

19  performed acts that tend to indicate the presence of remorse or has given indications that he

20  understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the

21  result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having

22  been victimized by battered women syndrome; (6) the prisoner lacks a significant history of

23  violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the

24  prisoner has made realistic plans for release or has developed marketable skills that can be put to

25  use upon release; and (9) institutional activities indicate an enhanced ability to function within

26  the law upon release.  Cal. Code Regs., tit. 15, § 2281(d).

6

1    The following circumstances tend to indicate unsuitability for release:  (1) the

2    prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the

3    prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the

4    prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe

5    mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in

6    prison.  Cal. Code Regs., tit. 15, § 2281(c).  Factors to consider in deciding whether the

7    prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include:

8    (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the

9    offense was carried out in a dispassionate and calculated manner, such as an execution-style

10   murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the

11   offense was carried out in a manner that demonstrated an exceptionally callous disregard for

12   human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the

13   offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E).

14          In California, the overriding concern in determining parole suitability is public

15   safety and the focus is on the inmate's current dangerousness.  In re Dannenberg, 34 Cal. 4th at

16   1086; In re Lawrence, 44 Cal. 4th at 1205.  The California Supreme Court recently stated:

17          [T]he Penal Code and corresponding regulations establish that the
             fundamental consideration in parole decisions is public safety [and]
18          the core determination of "public safety" . . . involves an
             assessment of an inmate's *current* dangerousness. . . . [A] parole
19          release decision authorizes the Board (and the Governor) to
             identify and weigh only the factors relevant to predicting "whether
20          the inmate will be able to live in society without committing
             additional antisocial acts."  These factors are designed to guide an
21          assessment of the inmate's threat to society, *if released*, and hence
             could not logically relate to anything but the threat *currently* posed
22          by the inmate.

23   In re Lawrence, 44 Cal. 4th at 1205-06 (internal citations omitted)(emphasis in original).

24          Accordingly, when California courts review a decision by the Board to deny

25   parole to an inmate, "the relevant inquiry is whether some evidence supports the decision of the

26   Board or the Governor that the inmate constitutes a current threat to public safety, and not merely

7

1   whether some evidence confirms the existence of certain factual findings." Id. at 1212 (citing In

2   re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071; In re Lee, 143 Cal.

3   App. 4th 1400, 1408 (2006)).

4           In recent years the Ninth Circuit Court of Appeals has concluded that, given the

5   liberty interest that California prisoners have in release on parole, a continued reliance upon an

6   unchanging factor to support a finding of unsuitability for parole may, over time, constitute a

7   violation of due process.  The court has addressed the issue in three significant cases, each of

8   which will be discussed below.

9           First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued

10  reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could

11  at some point result in a due process violation.[3]  While the court in Biggs rejected several of the

12  reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld

13  three:  (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was

14  carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3)

15  petitioner could benefit from therapy.  Biggs, 334 F.3d at 913.  However, the court in Biggs

16  cautioned that continued reliance solely upon the gravity of the offense of conviction and

17  petitioner's conduct prior to committing that offense in denying parole could, at some point,

18  violate due process.  In this regard, the court observed:

19              As in the present instance, the parole board's sole supportable
                reliance on the gravity of the offense and conduct prior to
20              imprisonment to justify denial of parole can be initially justified as
                fulfilling the requirements set forth by state law.  Over time,
21              however, should Biggs continue to demonstrate exemplary
                behavior and evidence of rehabilitation, denying him a parole date
22              simply because of the nature of Biggs' offense and prior conduct
                would raise serious questions involving his liberty interest in
23              parole.

24  Id. at 916.  The court in Biggs also stated that "[a] continued reliance in the future on an

25  ────────────

26      [3]  That holding has been acknowledged as representing the law of the circuit.  Irons, 505
    F.3d at 853; Sass, 461 F.3d at 1129.

8

1   unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

2   contrary to the rehabilitative goals espoused by the prison system and could result in a due

3   process violation." <u>Biggs</u>, 334 F.3d at 917.

4          In <u>Sass</u>, the Board found the petitioner unsuitable for parole at his third suitability

5   hearing based on the gravity of his offenses of conviction in combination with his prior offenses.

6   461 F.3d at 1126.  Citing <u>Biggs</u>, the petitioner in <u>Sass</u> contended that reliance on these

7   unchanging factors violated due process.  The court disagreed, concluding that these factors

8   amounted to "some evidence" to support the Board's determination.  <u>Id</u>. at 1129.  The court

9   provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and *could* result
> in a due process violation." <u>Biggs</u>, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  <u>Cf</u>. <u>id</u>.  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses
> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

18  <u>Id</u>. at 1129.

19         In <u>Irons</u>, the Ninth Circuit sought to harmonize the holdings in <u>Biggs</u> and <u>Sass</u>,

20  stating as follows:

> Because the murder Sass committed was less callous and cruel than
> the one committed by Irons, and because Sass was likewise denied
> parole in spite of exemplary conduct in prison and evidence of
> rehabilitation, our decision in <u>Sass</u> precludes us from accepting
> Irons' due process argument or otherwise affirming the district
> court's grant of relief.
>
> We note that in all the cases in which we have held that a parole
> board's decision to deem a prisoner unsuitable for parole solely on
> the basis of his commitment offense comports with due process,
> the decision was made before the inmate had served the minimum

9

1  number of years required by his sentence.  Specifically, in <u>Biggs</u>,
2  <u>Sass</u>, and here, the petitioners had not served the minimum number
   of years to which they had been sentenced at the time of the
3  challenged parole denial by the Board.  <u>Biggs</u>, 334 F.3d at 912;
   <u>Sass</u>, 461 F.3d at 1125.  All we held in those cases and all we hold
4  today, therefore, is that, given the particular circumstances of the
   offenses in these cases, due process was not violated when these
5  prisoners were deemed unsuitable for parole prior to the expiration
   of their minimum terms.

6  Furthermore, we note that in <u>Sass</u> and in the case before us there
   was substantial evidence in the record demonstrating rehabilitation.
7  In both cases, the California Board of Prison Terms appeared to
   give little or no weight to this evidence in reaching its conclusion
8  that Sass and Irons presently constituted a danger to society and
   thus were unsuitable for parole.  We hope that the Board will come
9  to recognize that in some cases, indefinite detention based solely
   on an inmate's commitment offense, regardless of the extent of his
10 rehabilitation, will at some point violate due process, given the
   liberty interest in parole that flows from the relevant California
11 statutes.  <u>Biggs</u>, 334 F.3d at 917.

12 <u>Irons</u>, 505 F.3d at 853-54.[4]

13      2.  <u>Petitioner's State Proceedings</u>

14        On November 15, 2006, the Board found petitioner unsuitable for parole and

15 concluded that he "would pose an unreasonable risk of danger to society or a threat to public

16 safety if released from prison."  (Pet., Ex. at 118.)  The Board stated that its conclusion was

17 based on the following circumstances:  (1) petitioner's "offense [was] carried out in a very brutal,

18 very cruel, callous manner" including "abuse[], defile[ment], and mutilat[ion] during and after

19 the event," all with "an exceptionally callous disregard for human life"; (2) petitioner's motive

20

21      [4]  The California Supreme Court has also acknowledged that the aggravated nature of the
22 commitment offense, over time, may fail to provide some evidence that the inmate remains a
   current threat to public safety.  <u>In re Lawrence</u>, 44  Cal. 4th at 1218-20 & n.20.  Additionally, a
23 recent panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536, 546-47 (9th Cir. 2008),
   determined that under the "unusual circumstances" of that case the unchanging factor of the
24 gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the
   governor's decision to reverse a parole grant on the basis that the petitioner would pose a
25 continuing danger to society.  However, on May 16, 2008, the Court of Appeals decided to rehear
   that case <i>en banc</i>.  <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008).  Therefore, the panel
26 decision in <u>Hayward</u> is no longer citable precedent.

1  for the crime was very trivial in relation to the offense; (3) petitioner had a previous "record of

2  violence and assaultive behavior"; (4) petitioner failed previous grants of probation and failed to

3  "profit from society's previous attempts to correct his criminality"; (5) petitioner had an unstable

4  social history; (6) petitioner had convictions as an adult including "assault with a deadly weapon,

5  drug charges, assault and battery, a rape charge, battery, resisting to a police officer [sic], vehicle

6  manslaughter . . . brandishing a weapon . . . [and] possession of controlled substances on a

7  number of occasions"; and (7) petitioner's psychological evaluation said that "very little weight

8  should be given" to it and that it only compared his dangerousness to other inmates, as opposed

9  to the community at large.  (Pet., Ex. 4 at 118-125.)

10         The Board noted the following circumstances for the record as favorable to

11  petitioner:  (A) "adequate parole plans in regards to residential [sic], acceptable employment and

12  marketable skills"; (B) letters of support; and (C) disciplinary free behavior.  (Id. at 122-125.)

13         On September 17, 2007, the Board's decision was reviewed by the Alameda

14  County Superior Court pursuant to a state petition for habeas corpus.  That court upheld the

15  Board's decision, stating:

16         Petitioner claims that there is no evidence to support the Board's
            decision, and that reliance on the commitment offense to deny him
17          parole violates his right to due process.  The Petition is denied on
            this ground for failure to state a prima facie case for relief.
18

19          "Regardless of the length of time served," here 18 years at the time
            of the parole suitability hearing at issue, "a life prisoner shall be
20          found unsuitable for and denied parole if in the judgment of the
            panel the prisoner will pose an unreasonable risk of danger to
21          society if released from prison."  Cal. Code of Regs., tit. 15, §2402,
            subd. (a).  Our Supreme Court held in Rosenkrantz that "the
22          judicial branch is authorized to review the factual basis of a
            decision of the Board denying parole in order to ensure that the
23          decision comports with the requirements of due process of law, but
            that in conducting such a review, the court may inquire only
24          whether some evidence in the record before the Board supports the
            decision to deny parole, based upon the factors specified by statute
25          and regulation.  If the decision's consideration of the specified
            factors is not supported by some evidence in the record and thus is
26          devoid of a factual basis, the court should grant the prisoner's
            petition for writ of habeas corpus and should order the Board to

vacate its decision denying parole . . ." In re Rosenkrantz, 29 Cal. App. 4th 616, 658 (2002); see also In re Lowe, 130 Cal. App. 4th 1405, 1429 (2005); In re Jacobsen, Cal. App. LEXIS 1416, p. 1-2, 11-17.

The Board had discretion in the manner in which the specified factors relevant to parole suitability are considered and balanced, and the resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the Board.  This court cannot reweigh the factors and substitute its judgment.  Rosenkrantz, supra, 29 Cal. App. 4th at p. 677.  The Board's decision is subject to limited review under the "some evidence" standard of review.  (Rosenkrantz, supra, 29 Cal. 4th at p. 652.)  Only a modicum of evidence is required.  (Id., at p. 626.)  The evidence in support of the Board's decision "'must have some indicia of reliability,'" (In re Scott, 133 Cal. App. 4th 573, 591 (2005) [citation omitted] and "'must have some basis in fact.'" (In re Elkins, 144 Cal. App. 4th 475, 489 (2006)[citation omitted].

When denial of parole is based solely on the commitment offense such denial justifies especially close scrutiny, and denial based solely on this factor is permissible so long as the Board does not fail to consider all other relevant factors. [Citation omitted].  The Board can look at the circumstances of the offense and rely [sic] the facts of the crime alone, so long as it points to factors beyond the minimum elements of the crime, in determining that a prisoner is unsuitable for release.  In re Dannenberg, 34 Cal. 4th 1061, 1070-71 (2005)[citation omitted].

The record reveals that the Board gave individualized consideration to all relevant factors.  Petitioner claims that the Board ignored the fact that he was 51 years 9 months old at the time of the parole hearing and that the recidivism rate for such individuals is lower.  However, the record reveals that Petitioner informed the Board of his birth date; there was a discussion of the fact that Petitioner was 34 years old when he committed the murder, and of the fact that before the murder Petitioner had a long and escalating history of violent crime.  The Board's decision goes into detail as to many favorable circumstances in support of parole, and is not required to specify in detail every pertinent fact relied upon.  See Elkins, supra, 144 Cal. App. 4th at p. 492, fn. 4.

As the Dannenberg Court noted, "[t]he regulations do set detailed standards and criteria for determining whether a murderer with an indeterminate life sentence is suitable for parole.  [Citation omitted].  Among the specified circumstances of the commitment offense that "tend to indicate unsuitability for release" are that "the prisoner committed the offense in an especially heinous, atrocious, or cruel manner." [Citation omitted.] Dannenberg, supra, 34 Cal. 4th at p. 1080.  Despite the positive factors, the Board felt that these did not outweigh the factors tending to show unsuitability for

release on parole.  The Board found Petitioner unsuitable for parole primarily based on the commitment offense (Cal. Code of Regs., tit. 15, §2402, subd. (c)(1)), Petitioner['s] previous record of violence (§2402, subd. (c)(2)), and Petitioner's unstable social history (§2402, subd. (c)(3)) [footnote excluded].

Among the specified circumstances of the commitment offense that "tend to indicate unsuitability for release" are that "the prisoner committed the offense in an especially heinous, atrocious, or cruel manner." [Citation omitted.]  In finding that Petitioner would pose an unreasonable risk of danger if released on parole, the Board specifically stated that the offense was carried out in a "very brutal, very cruel, callous manner."  The Board found that the murder was carried out in a dispassionate manner, that the victim was abused, defiled, mutilated during and after the offense, the murder was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering, and the motive for the crime was very inexplicable, very trivial in relation to the offense.  In this case, the record before the Board indicated that a civilian called the police saying that a man was on the access road to BART and needed help.  The victim was found in a parking lot in a pool of blood, and had been stabbed 15 times in the throat and neck.  The victim had thumb cuffs and he was also bound with plastic ties near his feet.  Petitioner had invited the victim to his home despite the fact that the victim had been behaving inappropriately towards Petitioner's girlfriend while they were at bars.  When at Petitioner's home, Petitioner and his victim got into a fight after Petitioner found the victim groping at Petitioner's girlfriend.  With the help of others, Petitioner tied up the victim's ankles, hands, and knees with large tie wraps.  Petitioner also placed thumb cuffs on the victim's thumbs.  Petitioner claimed that he decided to put the tie wraps on the victim because the victim would not stop kicking, fighting, and spitting.  Petitioner took a survival knife from his home and took it with him while he drove the victim to a nearby BART station, after the station had closed.  Petitioner was also armed with a hunting knife.  Petitioner claims that he took the victim to BART to drop him off there, and took the survival knife to cut the ties off the victim, the victim spit in his face and Petitioner lost it and just stabbed him and left him there.  Therefore, the record contains some reliable evidence supporting all the factors relied on by the Board to conclude that the commitment offense was *especially* cruel–the murder Petitioner committed was not a commonplace murder.  See In re Lee, 143 Cal. App. 4th 1400, 1409-1412 (2006) (emphasis in original).

The Board also relied on factors beyond the minimum elements of the crime.  Here, Petitioner suffered a conviction for second degree murder.  Penal Code §§ 187(a), 188, and 189.  "[A]ll second degree murders by definition involve some callousness–i.e. lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others. [Citation.]"  Smith, supra, 114 Cal.

App. 4th at p. 366.  Therefore, all second degree murders will involve some amount of viciousness and callousness.  In re Weider, 145 Cal. App. 4th 570, 587 (2006).  Second degree murder is defined as the unlawful killing of a human being with malice aforethought, *but without the additional elements* of willfulness, premeditation, and deliberation that would support a conviction of first degree murder.  People v. Nieto Benitez, 4 Cal. 4th 91, 102 (1992) (emphasis in original).  "Willful" means intentional, deliberate means deciding to act after thoughtful consideration, and premeditated means the act was considered beforehand.  CALJIC 8.20, People v. Memro, 11 Cal. 4th 786, 863 (1995).  Premeditation and deliberation do not require much time and may be arrived at quickly. [Citations omitted].  Here, there is some evidence, that Petitioner had premeditated and calculated the murder–the bounding of the victim before taking him to the closed BART station and arming himself with an additional knife before leaving his home.

In contrast to the life prisoner in In re DeLuna, 126 Cal. App. 4th 585 (2005), there is some evidence by Petitioner's own admission that Petitioner had an alcohol and drug problem, and that it contributed to a history of unstable and tumultuous relationships, which included leaving school and running away to Canada and problems with the law.

The record also supports the Board's finding that Petitioner had a previous record for violence.  Petitioner's adult record included an assault with a deadly weapon conviction by the time he was 17 years old, where he stabbed a man lacerating his kidney.  He had many other violence related arrests, several of which resulted in convictions.  He was convicted of rape and oral copulation, and also convicted of vehicle manslaughter.  By age 34, Petitioner was convicted of the instant offense, second degree murder.

The Board's determination that Petitioner poses an unreasonable risk of danger to society took into consideration all relevant and reliable factors and is supported by some evidence.  Thus, the Board's denial of release on parole does not violate due process, and Petitioner fails to show a prima facie case for relief.

Finally, it is worth noting that the Board did not find Petitioner had engaged in serious misconduct while in prison.  Thus, although the Board did consider Petitioner's misconduct while in prison, this was not a factor the Board held against Petitioner in its determination of parole suitability as claimed by Petitioner.  Also the Board did not rely on the opposition by the prosecution in finding Petitioner unsuitable for parole as claimed by Petitioner.  Instead, the record is clear that the Board simply noted the opposition by prosecution.

(Pet., Ex. at 256-261.)

14

1          3. <u>Analysis</u>

2          After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and

3 <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is not entitled to

4 federal habeas relief with respect to his due process challenge to the Board's November 15, 2006

5 decision denying him parole.

6          First, and perhaps most importantly, at the time of the challenged parole

7 suitability hearing, petitioner had not yet served the minimum number of years (15) required by

8 his sentence.  Petitioner had been imprisoned within the Department of Corrections and

9 Rehabilitation since February 10, 1992.  (Pet., Ex. at 177, 181, 203, 224-225, 243.)  Therefore,

10 the expiration of petitioner's minimum term for purposes of federal due process review would be

11 February 10, 2007.  The challenged hearing took place November 15, 2006, just under 3 months

12 prior to the expiration of his minimum term.  Pursuant to the holding in <u>Irons</u>, petitioner's right

13 to due process was not violated when he was deemed unsuitable for parole prior to the expiration

14 of his minimum term.  <u>Irons</u>, 505 F.3d at 665.

15          Further, the Board's decision that petitioner was unsuitable for parole and that his

16 release would unreasonably endanger public safety was supported by "some evidence" that bore

17 "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  A review of the record reflects that the Board

18 relied in large part on the circumstances of petitioner's offense of conviction but also his record

19 of violent and assaultive behavior and his failure of rehabilitation through probation.  According

20 to the cases cited above, these factors constitute "some evidence" supporting the Board's

21 decision where petitioner has not served the minimum term required by his sentence.  <u>Sass</u>, 469

22 F.3d at 1129; <u>Irons</u>, 505 F.3d at 665.

23          The Board's 2006 decision that petitioner was unsuitable for parole and would

24 pose a danger to society if released meets the minimally stringent test set forth in <u>Biggs</u>, <u>Sass</u>,

25 and <u>Irons</u>.  This case has not yet reached the point where a continued reliance on an unchanging

26 factor, such as the circumstances of the offense, in denying parole has resulted in a due process

1  violation.  Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to

2  find him suitable for parole at the November 15, 2006 hearing violated his right to due process.

3  <u>Sass</u>, 461 F.3d at 1129; <u>Irons</u>, 505 F.3d at 664-65.

4        B.  <u>Violation of Plea Bargain</u>

5              Petitioner alleges that "objections to parole from the prosecutor amount to a

6  breach of petitioner's plea agreement," i.e. a breach of contract between the prosecutor and

7  petitioner.  (P. & A. at 29-31.)

8              The California Court of Appeal addressed petitioner's claim as follows:

9              Petitioner's claim that the prosecutor's opposition to parole
               amounts to a violation of the plea agreement with Petitioner is
10             without merit.  First, Petitioner failed to allege the express terms of
               the agreement in his Petition and thereby fails to allege, with
11             sufficient specificity, facts in support of this ground for relief.
               <u>People v. Duvall</u>, 9 Cal. 4th 464, 474 (1995).  Moreover, Petitioner
12             failed to include the sentencing transcript as part of his exhibits in
               support of his Petition.  Therefore, he has not established that any
13             express or implied term of his plea agreement, (1) precluded the
               prosecution from exercising its right under [Cal.] Penal Code
14             § 3042 to express its view on parole, or that (2) the Board was
               precluded from exercising its statutorily authorized discretion to
15             consider the facts of the offense in determining his suitability for
               parole.  Instead, Petitioner alleges his subjective believes [sic] as to
16             the plea bargain.  "A plea agreement violation claim depends upon
               the actual terms of the agreement, not the subjective understanding
17             of the defendant or deficient advice provided by his attorney."  <u>In
               re Honesto</u>, 130 Cal. App. 4th 81, 92 (2005).  The allegations in
18             support of the claim that Petitioner is entitled to relief because the
               prosecution violated the plea bargain with Petitioner are
19             insufficient and relief is denied on this ground.

20  (Pet., Ex. at 256.)

21              A criminal defendant's right to due process of the law entitles him/her to

22  enforcement of the terms of a plea agreement.  <u>Santobello v. New York</u>, 404 U.S. 257, 261-262

23  (1971).  "[W]hen a plea rests in any significant degree on a promise or agreement of the

24  prosecutor, so that it can be said to be a part of the inducement or consideration, such promise

25  must be fulfilled."  <u>Id</u>. at 262.  It is clearly established federal law that the construction and

26  interpretation of state court plea agreements, and their resulting contractual obligations, are

generally matters of state law.  <u>Buckley v. Terhune</u>, 441 F.3d 688, 694-695 (9th Cir. 2006).

"Plea agreements are contractual in nature and are measured by contract law standards."  <u>Brown</u>

<u>v. Poole</u>, 337 F.3d 1155, 1159 (9th Cir. 2003).  In California, a court must first look to the plain

meaning of the agreement's language.  <u>Buckley</u>, 441 F. 3d at 695.

Here, petitioner has not presented evidence of a promise by the prosecutor not to

object to petitioner's later parole requests as part of the original plea agreement.  <u>See</u> Pet., Ex. at

235-236.  Measuring petitioner's plea agreements by contract law standards in California,

petitioner's claim lacks merit.  <u>See</u> <u>In re DeLuna</u>, 126 Cal. App. 4th 585, 599 (2004) (finding that

nothing in the record indicated that the petitioner's plea agreement included a promise by the

prosecutor that the petitioner would be released on parole at any specific time or that the

prosecutor would cease arguing on a given date that the commitment offense was especially

callous and concluding that, absent such evidence, the petitioner "cannot establish that his

continued incarceration is a breach of his bargain.")

The California Court of Appeal's decision regarding petitioner's claim was not

contrary to, or an unreasonable application of, clearly established federal law.  Accordingly,

petitioner is not entitled to relief on his claim.

CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that

petitioner's application for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

objections shall be filed and served within fourteen days after service of the objections.  The

/////

17

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 19, 2010.

UNITED STATES MAGISTRATE JUDGE

014c; osull1469.157

18